IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KYLE KIRCHNER, | ) |
|     PLAINTIFF | ) |
| | ) Civil Action No._____ |
| v. | ) |
| | ) |
| STATE OF TENNESSEE; | ) |
| TENNESSEE DEPARTMENT OF | ) JURY DEMAND |
| CORRECTION; DERRICK D. | ) |
| SCHOFIELD, COMMISSIONER OF | ) |
| TENNESSEE DEPARTMENT OF | ) |
| CORRECTION, in his official capacity; | ) |
| WARDEN TONY HOWERTON, in | ) |
| his personal and official capacities; | ) |
| ARRON SILVIERA, in his personal | ) |
| Capacity; JONATHAN EDGEMON, in | ) |
| his personal capacity, | ) |
| | ) |
|     DEFENDANTS. | ) |

## COMPLAINT

### INTRODUCTION

1. Plaintiff alleges that Defendants subjected him to cruel and unusual punishment and deprived him of his constitutional rights guaranteed by the Eighth Amendment and Fourteenth Amendment to the United States Constitution.

2. Plaintiff alleges that Defendants discriminated against him due to his disability in violation of the Americans with Disabilities Act (ADA), as amended, 42 U.S.C. §§ 12101 et seq., and Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. §§ 791 et seq., and their implementing regulations.

1

3. As a result of their violations of the United States Constitution and federal laws as set out above, Plaintiff also alleges that Defendants have deprived him of his civil rights in violation of 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

4. Because Plaintiff has stated multiple federal claims, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

5. Because the principal place of business of Defendants State of Tennessee, Defendant Tennessee Department of Correction (TDOC), and Defendant TDOC Commissioner Derrick D. Schofield is Nashville, Tennessee, venue is proper under 28 U.S.C. § 1391.

## PARTIES

6. Plaintiff has been adjudicated to the custody of TDOC and is currently housed at the Northeast Correctional Complex in Mountain City, Tennessee.

7. Plaintiff is an adult.

8. Plaintiff has multiple mental impairments, including bipolar disorder, each of which substantially limit his major life activities.

9. Plaintiff's mental impairments substantially limit his major life activities, including but not limited to, reasoning, judgment, impulse control, self-care, and interacting with others.

10. Plaintiff was incarcerated at the Morgan County Correctional Complex (MCCX), a prison operated by the State of Tennessee in Wartburg, Tennessee in Morgan County, at the time of the incident that is the subject of this Complaint.

11. During the time Plaintiff was housed at MCCX, Defendants knew or should have known that Plaintiff had multiple mental health impairments and related needs.

12. Upon information and belief, Defendant State of Tennessee owns and operates MCCX. The principal place of business for the State of Tennessee is Nashville, Tennessee.

13. Upon information and belief, Defendant TDOC is Defendant State of Tennessee's public penal agency and operates MCCX. The principal place of business for TDOC is Nashville, Tennessee.

14. Upon information and belief, Defendant Derrick D. Schofield is the Commissioner of the Tennessee Department of Correction and, in his official capacity, is responsible for the administration of the operations of TDOC and MCCX. The principal place of business for TDOC is Nashville, Tennessee.

15. Upon information and belief, Defendant Tony Howerton was the warden of MCCX and an employee of TDOC and, in his official capacity, was responsible for the day-to-day administration and operations of MCCX at the time of the incident that is the subject of this Complaint. The principal place of business for TDOC is Nashville, Tennessee.

16. State Defendants collectively refers to Defendant State of Tennessee, Defendant TDOC, Defendant Schofield, and Defendant Howerton.

17. Upon information and belief, Defendant Jonathan Edgemon was an employee of MCCX at the time of the incident that is the subject of this Complaint.

18. Upon information and belief, Defendant Arron Silviera was an employee of MCCX at the time of the incident that is the subject of this Complaint.

## FACTS

Plaintiff alleges all of the following:

19. On or about November 16, 2012, Plaintiff was in the custody of Defendant TDOC.

20. On or about November 16, 2012, Plaintiff was an inmate of MCCX, located in Wartburg, Tennessee.

21. MCCX inmates are housed in buildings known as "units" and each unit encompasses four separate living areas known as "pods."

22. On or about November 16, 2012, Plaintiff was housed in MCCX Housing Unit 21, D-Pod, Cell 215, a medium custody housing unit.

23. During the time Plaintiff was incarcerated at MCCX, MCCX personnel and management knew or should have known Plaintiff had mental impairments and related needs.

24. During the time Plaintiff was incarcerated at MCCX, MCCX personnel and management intermittently provided medications for treatment of Plaintiff's mental impairments, including bipolar disorder.

25. On or about November 16, 2012, Associate Warden of Operations Donald Cook, after reviewing video surveillance of Unit 21, allegedly observed inmates moving from one pod to another without permission.

26. On or about November 16, 2012, Associate Warden of Operations Donald Cook ordered correctional staff to have those inmates not on "pod" time locked in their respective cells ("lockdown").

27. On or about November 16, 2012, Officer Jerry Stone allegedly ordered the inmates housed in the D-Pod of MCCX to return to their cells for lockdown.

28. On or about November 16, 2012, some inmates allegedly did not comply with this order.

29. On or about November 16, 2012, Defendant Howerton assembled the Correctional Emergency Response Team (CERT) to address safety concerns in Unit 21, D-Pod.

30. CERT is a five-member team comprised of MCCX correctional staff whose sole daily function is to conduct searches of inmates, property, and cells.

31. On or about November 16, 2012, Defendant Howerton assembled the Facility Based Tactical Squad (FBTS) to address safety concerns in Unit 21, D-Pod.

32. FBTS is a special team comprised of 13 MCCX correctional staff who, under orders from the Warden, respond to emergency situations within MCCX.

33. On or about November 16, 2012, Defendant Silviera was a member of either the CERT or FBTS response team assembled to respond to the alleged situation in Unit 21, D-Pod.

34. On or about November 16, 2012, Defendant Edgemon was a member of either the CERT or FBTS response team assembled to respond to the alleged situation in Unit 21, D-Pod.

35. On or about November 16, 2012, Defendant Howerton deployed CERT to Unit 21, D-Pod.

36. On or about November 16, 2012, Defendant Howerton deployed FBTS to Unit 21, D-Pod.

37. After Defendant Howerton deployed CERT to Unit 21, D-Pod, on or about November 16, 2012, he allegedly ordered inmates to return to their cells.

38. After Defendant Howerton deployed FBTS to Unit 21, D-Pod, on or about November 16, 2012, he allegedly ordered inmates to return to their cells.

39. After ordering the inmates back to their cells on or about November 16, 2012, Defendant Howerton first directed Corporal Phillip Kelly to deploy a Mini Flashbang.

40. On or about November 16, 2012, Defendant Howerton then directed Corporal Phillip Kelly to deploy a Standard Flashbang.

41. On or about November 16, 2012, the CERT and FBTS teams entered Unit 21, D-Pod.

42. On or about November 16, 2012, Plaintiff attempted to comply with the orders from Defendant Howerton to return to his cell.

43. On or about November 16, 2012, Plaintiff attempted to open his cell door.

44. On or about November 16, 2012, Plaintiff's cell door was locked.

45. On or about November 16, 2012, Plaintiff stood outside of his locked cell door.

46. On or about November 16, 2012, Plaintiff banged on his locked cell door.

47. On or about November 16, 2012, Plaintiff laid down on the floor before correctional officers reached the top of the D-Pod stairs.

48. On or about November 16, 2012, a CERT/FBTS team, including Defendant Silviera, reached Plaintiff's cell and allegedly ordered Plaintiff to lie down on the floor.

49. On or about November 16, 2012, a CERT/FBTS team, including Defendant Edgemon, reached Plaintiff's cell and allegedly ordered Plaintiff to lie down on the floor.

50. On or about November 16, 2012, Plaintiff complied with the order from the correctional officers to lie down on the floor.

51. On or about November 16, 2012, Plaintiff was not combative when he laid down on the floor.

52. On or about November 16, 2012, Plaintiff did not have any injuries at the time he laid down on the floor.

53. On or about November 16, 2012, correctional officers approached Plaintiff and began to restrain him.

54. On or about November 16, 2012, Plaintiff did not resist restraint.

55. While Plaintiff was lying on the floor, Defendant Edgemon physically attacked Plaintiff by kicking Plaintiff in and about the face/head on or about November 16, 2012.

56. While Plaintiff was lying on the floor, Defendant Silviera physically attacked Plaintiff by punching him in and about the face/head on or about November 16, 2012.

57. While Plaintiff was lying on the floor on or about November 16, 2012, correctional officers slammed his head into the ground.

58. On or about November 16, 2012, Plaintiff was bleeding after Defendant Edgemon assaulted him.

59. On or about November 16, 2012, Plaintiff was bleeding after Defendant Silviera assaulted him.

60. On or about November 16, 2012, Plaintiff did not have any weapons.

61. On or about November 16, 2012, correctional officers searched Plaintiff's person and found no weapons.

7

62. After being assaulted by Defendant Edgemon on or about November 16, 2012, correctional officers carried Plaintiff, who was restrained and bleeding, face-down down the stairs.

63. After being assaulted by Defendant Silviera on or about November 16, 2012, correctional officers carried Plaintiff, who was restrained and bleeding, face-down down the stairs.

64. On or about November 16, 2012, Plaintiff was taken by correctional staff to the MCCX clinic for medical evaluation for injuries sustained during Defendant Edgemon's assault on him.

65. On or about November 16, 2012, Plaintiff was taken by correctional staff to the MCCX clinic for medical evaluation for injuries sustained during Defendant Silviera's assault on him.

66. During Plaintiff's escort to the MCCX clinic on or about November 16, 2012, correctional officers continued assaulting Plaintiff by jabbing at him.

67. During Plaintiff's escort to the MCCX clinic on or about November 16, 2012, correctional officers were verbally abusive toward Plaintiff.

68. While in the MCCX medical clinic on or about November 16, 2012, Defendant Silviera physically attacked Plaintiff again by slapping him in the face.

69. While in the MCCX medical clinic on or about November 16, 2012, correctional officers assaulted Plaintiff by punching him in the abdomen.

70. While in the MCCX medical clinic on or about November 16, 2012, correctional officers assaulted Plaintiff by punching him in the groin.

71. While in the MCCX medical clinic on or about November 16, 2012, correctional officers assaulted Plaintiff by choking him.

72. On or about November 16, 2012, Plaintiff was bleeding, had lacerations, bruises, and swelling on or about his face/head.

73. On or about November 16, 2012, Plaintiff did not receive appropriate or adequate medical treatment for his injuries at the MCCX medical clinic.

74. On or about November 16, 2012, Plaintiff was not evaluated by a physician for his injuries at the MCCX medical clinic.

75. On or about November 16, 2012, Plaintiff was not x-rayed to determine the extent of his injuries at the MCCX medical clinic.

76. Despite the fact that Plaintiff was bleeding, had lacerations, bruises, and swelling on or about his face/head and was once again assaulted by Defendant Silviera while at the MCCX medical clinic, Plaintiff did not receive appropriate or adequate medical treatment for his injuries, was not evaluated by a physician, and was not x-rayed on or about November 16, 2012.

77. Shortly after Defendants Edgemon and Silviera's assault on Plaintiff, Plaintiff was transferred to Riverbend Maximum Security Institution in Nashville, Tennessee, pending an internal investigation of his assault by TDOC.

78. Plaintiff was not evaluated by a physician until approximately 18 days after his injuries.

79. As a result of Defendant Edgemon's physical attack on Plaintiff at MCCX on or about November 16, 2012, Plaintiff suffered bodily injury.

80. As a result of Defendant Edgemon's physical attack on Plaintiff at MCCX on or about November 16, 2012, Plaintiff suffered bodily injury including lacerations.

81. As a result of Defendant Edgemon's physical attack on Plaintiff at MCCX on or about November 16, 2012, Plaintiff suffered bodily injury including cuts.

82. As a result of Defendant Edgemon's physical attack on Plaintiff at MCCX on or about November 16, 2012, Plaintiff suffered bodily injury including burst blood vessels.

83. As a result of Defendant Edgemon's physical attack on Plaintiff at MCCX on or about November 16, 2012, Plaintiff suffered bodily injury including bruises on his head and face.

84. As a result of Defendant Edgemon's physical attack on Plaintiff at MCCX on or about November 16, 2012, Plaintiff suffered bodily injury and now has a scar above his right eye.

85. As a result of Defendant Edgemon's physical attack on Plaintiff at MCCX on or about November 16, 2012, Plaintiff suffered bodily injury and now suffers from intense headaches.

86. As a result of Defendant Edgemon's physical attack on Plaintiff at MCCX on or about November 16, 2012, Plaintiff suffered bodily injury and now suffers from vision issues including episodes of blurred vision.

87. As a result of Defendant Silviera's physical attacks on Plaintiff at MCCX on or about November 16, 2012, Plaintiff suffered bodily injury.

88. As a result of Defendant Silviera's physical attacks on Plaintiff at MCCX on or about November 16, 2012, Plaintiff suffered bodily injury including lacerations.

89. As a result of Defendant Silviera's physical attacks on Plaintiff at MCCX on or about November 16, 2012, Plaintiff suffered bodily injury including cuts.

90. As a result of Defendant Silviera's physical attacks on Plaintiff at MCCX on or about November 16, 2012, Plaintiff suffered bodily injury including burst blood vessels.

91. As a result of Defendant Silviera's physical attacks on Plaintiff at MCCX on or about November 16, 2012, Plaintiff suffered bodily injury including bruises on his head and face.

92. As a result of Defendant Silviera's physical attacks on Plaintiff at MCCX on or about November 16, 2012, Plaintiff suffered bodily injury and now has a scar above his right eye.

93. As a result of Defendant Silviera's physical attacks on Plaintiff at MCCX on or about November 16, 2012, Plaintiff suffered bodily injury and now suffers from intense headaches.

94. As a result of Defendant Silviera's physical attacks on Plaintiff at MCCX on or about November 16, 2012, Plaintiff suffered bodily injury and now suffers from vision issues including episodes of blurred vision.

95. Due to Defendant Edgemon's attack on Plaintiff at MCCX on or about November 16, 2012, Plaintiff experienced emotional distress.

96. Due to Defendant Edgemon's attack on Plaintiff at MCCX on or about November 16, 2012, Plaintiff continues to experience emotional distress.

97. Due to Defendant Edgemon's attack on Plaintiff at MCCX on or about November 16, 2012, Plaintiff continues to experience emotional distress including anxiety.

98. Due to Defendant Edgemon's attack on Plaintiff at MCCX on or about November 16, 2012, Plaintiff continues to experience emotional distress including difficulty sleeping.

99. Due to Defendant Edgemon's attack on Plaintiff at MCCX on or about November 16, 2012, Plaintiff continues to experience emotional distress including nightmares.

100. Due to Defendant Edgemon's attack on Plaintiff at MCCX on or about November 16, 2012, Plaintiff continues to experience emotional distress including fear of retaliation.

101. Due to Defendant Silviera's attacks on Plaintiff at MCCX on or about November 16, 2012, Plaintiff experienced emotional distress.

102. Due to Defendant Silviera's attacks on Plaintiff at MCCX on or about November 16, 2012, Plaintiff continues to experience emotional distress.

103. Due to Defendant Silviera's attacks on Plaintiff at MCCX on or about November 16, 2012, Plaintiff continues to experience emotional distress including anxiety.

104. Due to Defendant Silviera's attacks on Plaintiff at MCCX on or about November 16, 2012, Plaintiff continues to experience emotional distress including difficulty sleeping.

105. Due to Defendant Silviera's attacks on Plaintiff at MCCX on or about November 16, 2012, Plaintiff continues to experience emotional distress including nightmares.

106. Due to Defendant Silviera's attacks on Plaintiff at MCCX on or about November 16, 2012, Plaintiff continues to experience emotional distress including fear of retaliation.

107. At all times relevant to the facts in this Complaint, Defendant Edgemon was acting under color of state law and was an agent of State Defendants.

108. At all times relevant to the facts of this Complaint, Defendant Silviera was acting under color of state law and was an agent of State Defendants.

109. After correctional officers assaulted Plaintiff on or about November 16, 2012, Plaintiff filed a grievance with TDOC regarding the assault.

110. After correctional officers assaulted Plaintiff on or about November 16, 2012, TDOC charged Plaintiff with "Interference with Officer Duties."

111. After TDOC charged Plaintiff with "Interference with Officer Duties," Plaintiff was entitled to have a hearing to determine the consequences of Plaintiff being charged.

112. After TDOC charged Plaintiff with "Interference with Officer Duties," Plaintiff was entitled to attend a hearing to determine the consequences of Plaintiff being charged.

113. After TDOC charged Plaintiff with "Interference with Officer Duties," a hearing was held to determine the consequences of Plaintiff being charged.

114. After TDOC charged Plaintiff with "Interference with Officer Duties," TDOC did not notify Plaintiff of the hearing date.

115. After TDOC charged Plaintiff with "Interference with Officer Duties," TDOC held the hearing without Plaintiff being present.

116. After TDOC charged Plaintiff with "Interference with Officer Duties," Plaintiff did not waive his right to attend the hearing.

117. After TDOC charged Plaintiff with "Interference with Officer Duties," Plaintiff did not sign any paperwork waiving his right to attend the hearing.

118. After TDOC charged Plaintiff with "Interference with Officer Duties," TDOC found Plaintiff guilty.

119. As a result of finding Plaintiff guilty, TDOC increased Plaintiff's security level.

120. As a result of the security level increase, TDOC delayed Plaintiff's eligibility for parole.

121. TDOC charged Plaintiff with "Interference with Officer Duties" in retaliation against Plaintiff for filing a grievance.

122. TDOC did not notify Plaintiff of the hearing date in retaliation against Plaintiff for filing a grievance.

123. TDOC held the hearing without Plaintiff being present in retaliation against Plaintiff for filing a grievance.

124. TDOC found Plaintiff guilty of the charge "Interference with Officer Duties" in retaliation against Plaintiff for filing a grievance.

125. TDOC increased Plaintiff's security level in retaliation against Plaintiff for filing a grievance.

126. TDOC delayed Plaintiff's eligibility for parole in retaliation against Plaintiff for filing a grievance.

127. The attack on Plaintiff by Defendants Edgemon and Silviera is part of a pattern and practice of physical attacks on individuals with disabilities who have been adjudicated to TDOC. This pattern and practice creates an atmosphere of fear and intimidation throughout the population of adults adjudicated to TDOC. Because the actions of Defendants Edgemon and Silviera toward Plaintiff resulted from this pattern and practice on the part of the State Defendants, those State Defendants are also responsible for Plaintiff's physical injuries and ongoing emotional distress.

128. The State Defendants acted with deliberate indifference to Plaintiff's civil rights by failing to have appropriate policies and procedures in place for Defendants Edgemon and Silviera to follow regarding discrimination against, treatment of, and medical care for individuals with disabilities at MCCX. Because the actions of Defendants Edgemon and Silviera toward Plaintiff resulted from this deliberate indifference on the part of the State Defendants, those State Defendants are also responsible for Plaintiff's physical injuries and ongoing emotional distress.

129. The State Defendants acted with deliberate indifference to Plaintiff's civil rights by failing to appropriately train Defendants Edgemon and Silviera regarding discrimination against, treatment of, and medical care for individuals with disabilities at MCCX. Because the actions of Defendants Edgemon and Silviera toward Plaintiff resulted from this deliberate indifference on the part of the State Defendants, those State Defendants are also responsible for Plaintiff's physical injuries and ongoing emotional distress.

130. The State Defendants acted with deliberate indifference to Plaintiff's civil rights by failing to provide appropriate and timely medical care for Plaintiff after he was assaulted by Defendants Edgemon and Silviera on or about November 16, 2012. Because the actions of TDOC medical staff toward Plaintiff resulted from this deliberate indifference on the part of the State Defendants, those State Defendants are also responsible for Plaintiff's physical injuries and ongoing emotional distress.

## **CAUSES OF ACTION**

131. Plaintiff repeats the allegations of paragraphs 1 through 130 as fully set forth herein.

132. On or about November 16, 2012, Defendants Edgemon and Silviera maliciously assaulted Plaintiff.

133. At all times relevant to the allegations of this Complaint, Defendants Edgemon and Silviera were acting as employees and agents of State Defendants.

134. At all times relevant to the allegations in this Complaint, Defendants Edgemon and Silviera were acting under color of state law.

135. Plaintiff is an individual with a disability under the meaning of the ADA and Section 504. Plaintiff's mental impairments include, but are not limited to, bipolar disorder.

136. Plaintiff's mental impairments substantially limit his major life activities including but not limited to reasoning, judgment, impulse control, self-care, and interacting with others.

137. Because Plaintiff had been adjudicated to MCCX by a State court, Plaintiff was otherwise qualified to participate in programs and services at MCCX.

138. During the time Plaintiff was incarcerated at MCCX, the State Defendants and their agents, Defendants Edgemon and Silviera, knew or should have known that Plaintiff has multiple mental impairments and related needs.

139. On or about November 16, 2012, Defendants Edgemon and Silviera subjected Plaintiff to discrimination at MCCX solely by the reason of Plaintiff's disability.

### Count I: Violation of the Eighth Amendment and Fourteenth Amendment

140. Defendants Edgemon and Silviera acting at all times under the color of state law violated Plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution by physically assaulting Plaintiff such that Plaintiff sustained physical injuries and ongoing emotional distress.

141. State Defendants violated and were deliberately indifferent to Plaintiff's civil rights under the Eighth and Fourteenth Amendments by failing to provide appropriate policies, procedures, and training for Defendants Edgemon and Silviera to follow in regard to the treatment of inmates with mental disabilities and by withholding medical treatment from Plaintiff.

142. Plaintiff is entitled to all available remedies for such violations.

## Count II: Violations of Americans with Disabilities Act and Section 504 the Rehabilitation Act of 1973

143. Defendants Edgemon and Silviera, acting at all times under color of state law, discriminated against Plaintiff in violation of the ADA and Section 504 by physically assaulting Plaintiff due to his disability.

144. State Defendants discriminated against Plaintiff in violation of the ADA and Section 504 by failing to appropriately train Defendants Edgemon and Silviera regarding the treatment of individuals with disabilities and/or failing to have appropriate policies and procedures in place regarding the treatment of individuals with disabilities and by withholding medical treatment from Plaintiff.

145. Plaintiff is entitled to all available remedies for such violations.

## Count III: Violations of 42 U.S.C. § 1983

146. As a result of the violations of federal law set forth above, Plaintiff also has a cause of action under 42 U.S.C. § 1983.

147. By their assault on Plaintiff, Defendants Edgemon and Silviera violated and were deliberately indifferent to Plaintiff's civil rights under the ADA, Section 504, the Eight Amendment, and the Fourteenth Amendment.

148. State Defendants violated and were deliberately indifferent to Plaintiff's civil rights under the ADA, Section 504, the Eighth Amendment, and the Fourteenth Amendment.by failing to provide appropriate policies, procedures, and training to Defendants Edgemon and Silviera and by withholding medical treatment from Plaintiff.

149. Plaintiff is entitled to all remedies set forth in 42 U.S.C. § 1983.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

1. Declare the actions of all Defendants complained of herein to be in violation of the Eighth Amendment to the United States Constitution; the Fourteenth Amendment to the United States Constitution; the Americans with Disabilities Act 42 U.S.C. §§ 12101 et seq.; the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 et seq.; and 42 U.S.C. § 1983;

2. Pursuant to all claims asserted herein, award Plaintiff injunctive relief by ordering State Defendants to take all necessary steps to ensure that Plaintiff and other individuals with disabilities are not in the future subjected to discrimination and physical violence at MCCX and other state penal institutions;

3. Pursuant to Plaintiff's claims under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973, award Plaintiff compensatory damages from State Defendants in such amount as determined by a jury;

4. Pursuant to Plaintiff's claims under the Eighth and Fourteenth Amendments to the United States Constitution, award Plaintiff compensatory and punitive damages from State Defendants as determined by a jury;

5. Pursuant to Plaintiff's claims under § 1983, award Plaintiff compensatory and punitive damages from Defendants Howerton, Edgemon, and Silviera as determined by a jury;

6. Pursuant to all claims asserted herein, award Plaintiff all fees and costs of this lawsuit, including litigation expenses, out-of-pocket expenses, and reasonable attorneys' fees in accordance with all applicable provisions of law, including but not limited to the provisions of 42 U.S.C § 12205, 29 U.S.C § 794A(b), and 42 U.S.C § 1988; and

7. Order such and further relief as the Court may deem appropriate.

Dated: November 14, 2013                    Respectfully Submitted,


*[signature]*

Elizabeth Setty Reeve (BPR #026899)
Martha M. Lafferty (BPR #019817)
Disability Law & Advocacy Center of TN
2416 21st Avenue South, Suite 100
Nashville, TN 37212
(615) 298-1080