# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# NORTHERN DIVISION AT KNOXVILLE

| | |
|---|---|
| Kyle Kirchner, | ) |
|     *Plaintiff*, | ) |
| v. | )    Case No.: 3:14-CV-63-PLR-CCS |
| State of Tennessee, *et al.* | ) |
|     *Defendants*. | ) |

## Memorandum Opinion and Order

In November 2012, Kyle Kirchner, who suffers from bipolar disorder, was an inmate at the Morgan County Correctional Complex ("MCCX"), a prison operated by the State of Tennessee. After observing inmates moving from one pod to another without permission, an associate warden ordered a "lockdown." Accordingly, the inmates housed in Mr. Kirchner's pod were ordered to return to their cells. When some inmates did not comply with this order, Warden Howerton deployed the Correctional Emergency Response Team (the "CERT") and again ordered the inmates to return to their cells. Mr. Kirchner attempted to comply with those orders, but his cell door was locked. Accordingly, Mr. Kirchner lay down on the floor beside his cell door.

When officers reached Mr. Kirchner's location, they restrained him without resistance. Then, while Mr. Kirchner was still lying on the floor, defendant Edgemon allegedly kicked him in the head or face, defendant Silviera allegedly punched him in the head and face, and other unnamed correctional officers allegedly slammed his head into the ground. Officers then carried

Mr. Kirchner to the clinic for medical evaluation, where defendant Silviera allegedly slapped him in the face and other correctional officers punched and choked him. He was not evaluated by a physician for his injuries, and he did not receive any x-rays to determine the extent of his injuries.

Shortly thereafter, Mr. Kirchner was transferred to the Riverbend Maximum Security Institution in Nashville while the Tennessee Department of Corrections conducted an internal investigation concerning Mr. Kirchner's assault. He was eventually evaluated for his injuries, some 18 days after the assault. Mr. Kirchner contends that he suffered many bodily injuries emotional distress, anxiety, and nightmares. According to Mr. Kirchner, the assault, the failure to obtain medical treatment, and the failure to adequately train officers were all acts of discrimination based on Mr. Kirchner's bi-polar disorder.

Mr. Kirchner filed this action in November 2013 against Edgemon, Silviera, Warden Howerton, Derrick Schofield (the commissioner of the Tennessee Department of Corrections), the Tennessee Department of Corrections itself ("TDOC"), and the State of Tennessee. The complaint asserts § 1983 claims based on violations of Mr. Kirchner's Eighth and Fourteenth Amendment rights. He also asserts claims for violation of the Americans with Disabilities Act (the "ADA") and the Rehabilitation Act of 1973 (the "RA"). Apart from damages, Mr. Kirchner also seeks declaratory and injunctive relief, requiring the defendants to "take all necessary steps to ensure that [p]laintiff and other individuals with disabilities are not in the future subject to discrimination and violence at MCCX and other state penal institutions."

The State of Tennessee, TDOC, Warden Howerton, and Commissioner Schofield (the "State Defendants") have jointly filed a motion to dismiss all the plaintiff's claims asserted against them. Defendants Edgemon and Silviera have also filed partial motions to dismiss Count

2

II of the complaint because there can be no individual liability under the ADA or RA. The issues have been thoroughly briefed, and are now ripe. For the reasons to be discussed, the State Defendants' motion to dismiss will be granted. The State Defendants will be dismissed. Aaron Silviera and Jonathan Edgemon's motions will also be granted.

I.

Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure require the complaint to articulate a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requirement is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A motion to dismiss under Rule 12(b)(6) requires the court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff can prove no set of facts in support of the plaintiff's claims that would entitle the plaintiff to relief. *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir. 1990), *cert. denied,* 498 U.S. 867 (1990).

The court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall,* 898 F.2d 1196, 1198 (6th Cir. 1990); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995) (noting that courts should not weigh evidence or evaluate the credibility of witnesses). The court must liberally construe the complaint in favor of the party opposing the motion. *Id.* However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.3d 434, 436 (6th Cir. 1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (citations omitted).

II.

The plaintiff's claims against all the defendants for violations of the ADA and RA will be dismissed. First, a plaintiff cannot maintain an action under the ADA or the RA against an individual. *Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) (citing 29 U.S.C. § 794(b) (the RA) and 42 U.S.C. § 12131(1) (the ADA)). Accordingly, to the extent the plaintiff has asserted ADA and RA claims against defendants Edgemon and Silviera, those claims will be dismissed.

Second, the plaintiff fails to state a claim under the ADA and RA against the State Defendants. To make out a *prima facie* case under the ADA, a plaintiff must establish, among other things, that he has a disability and that he was subjected to discrimination solely because of his disability. *See Jones v. City of Monroe, MI*, 341 F.3d 474, 477 (6th Cir. 2003). "Because the ADA sets for the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson County, Tennessee*, 219 F.3d 555, 557 n.3 (6th Cir. 2000).

The plaintiff has not alleged any connection whatsoever between the assault or failure to render medical care and his disability. While the plaintiff makes conclusory allegations that he was discriminated against solely because of his disability, he offers no facts in support of that claim. As discussed above, a complaint must articulate more than a bare assertion of legal conclusions. *Fanny Farmer Candy Shops,* 859 F.3d at 436. The plaintiff's assertion that he cannot come up with any other reason for the assault apart from discrimination on account of his disability is insufficient to survive a motion to dismiss. The fact that the defendant has a disability and was assaulted does not necessarily lead to the conclusion that the defendant was assaulted *because* he had a disability.

Finally, the plaintiff's claims under the ADA and RA for failure to train are also without merit. Failure to train employees about the ADA affects all disabled persons, not just the plaintiff. Accordingly, the plaintiff cannot demonstrate that the State Defendants discriminated against him specifically by failing to train the guards. *See Dillery v. City of Sandusky*, 298 F.3d 562, 568 (6th Cir. 2005) ("Acts and omissions which have a disparate impact on disabled persons in general are not specific acts of intentional discrimination against the plaintiff in particular.") (internal quotations and punctuation omitted).

In sum, because the plaintiff has only made broad, conclusory allegations, and has not asserted any facts in support of the proposition that the defendants discriminated specifically against him solely because he was bipolar, his ADA and RA claims will be dismissed.

III.

The plaintiff's § 1983 claims against Tennessee, TDOC, Commissioner Schofield, and Warden Howerton will likewise be dismissed. As an initial matter, plaintiff has acknowledged that he cannot pursue § 1983 claims against the State of Tennessee or TDOC because of Eleventh Amendment sovereign immunity. Accordingly, the § 1983 claims against those entities will be dismissed.

The plaintiff asserts § 1983 claims for injunctive relief against Warden Howerton and Commissioner Schofield in their official capacities requiring them to take all necessary steps to ensure that the plaintiff and other individuals with disabilities are not subjected to discrimination and physical violence at MCCX or any other state penal intuitions. The plaintiff, however, is no longer an inmate at MCCX, and he does not allege that he continues to suffer from discrimination. Past exposure to illegal conduct does not give a plaintiff standing to seek injunctive relief. *Hange v. City of Mansfield, Ohio*, 257 F. App'x 887, 892 (6th Cir. 2007).

"'Absent a sufficient likelihood that he will again be wronged in a similar way,' a plaintiff is not entitled to injunctive relief." *Id.* at 891 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). In response to this, the plaintiff contends that, during his period of incarceration, he *could be* transferred back to MCCX. Alternatively, the plaintiff actually argues that, after his release, he may commit future crimes and be sent back to MCCX. These arguments are wholly insufficient to demonstrate a substantial likelihood of future similar harm. Accordingly, the plaintiff's § 1983 claims for injunctive and declaratory relief will be dismissed.

Finally, the plaintiff seeks money damages from Warden Howerton under § 1983. It has long been established that supervisory liability cannot attach where allegations of liability are based upon a mere failure to act. *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). Instead, active unconstitutional behavior is required. *Id.* A supervisor cannot be found liable based solely on the right to control employees or even on an awareness of misconduct. *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006). "A supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* (internal quotations omitted). According to the plaintiff, Warden Howerton directly participated in the assault by ordering the CERT team to go to the plaintiff's unit as part of the lockdown. This contention is without merit. There is nothing inherently unlawful in ordering a lockdown or dispatching the CERT team. The plaintiff does not contend that Warden Howerton encouraged Edgemon and Silviera to assault the plaintiff, or even that Warden Howerton had reason to believe they would assault the plaintiff. The plaintiff also fails to allege personal involvement in the alleged delays in providing medical care. Accordingly,

Warden Howerton's motion to dismiss will be granted, and the plaintiff's § 1983 claims against him will be dismissed.

IV.

For the foregoing reasons, the State Defendants' motion to dismiss [R. 45] is **Granted**. Tony Howerton, Derrick Schofield, the State of Tennessee, and the Tennessee Department of Correction are **Dismissed**. Arron Silviera and Jonathan Edgemon's partial motions to dismiss Count II of the complaint [R. 12, 37] are also **Granted**. Accordingly, this case shall proceed as to the plaintiff's claims against defendants Silviera and Edgemon asserted in Counts I and III.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**